UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CCL INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff and Arbitration Claimant, | ) | |
| | ) | Case No. 4:15-cv-1431-JAR |
| v. | ) | |
| | ) | |
| | ) | |
| LASER BAND, LLC, | ) | |
| | ) | |
| Defendant and Arbitration Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Laser Band, LLC's ("Laser Band") Motion to Dismiss (Doc. No. 6). Relatedly, Defendant has moved for the Court to take judicial notice of several publicly available documents during its consideration of the motion to dismiss (Doc. No. 8). No opposition was filed to the latter motion, so it will be granted. The motion to dismiss is fully briefed and ready for disposition. For the reasons stated herein, the motion to dismiss will be granted.

### BACKGROUND

Plaintiff CCL Industries, Inc. ("CCL")[1] and Laser Band are parties to a semi-exclusive licensing agreement in which CCL was granted a limited set of rights with regard to patents held by Laser Band. These patents govern wristband forms that CCL manufactures and sells. In December 2014, CCL made a demand for arbitration pursuant to the licensing agreement,

---

[1] CCL acquired a predecessor company, Avery/Denison Corporation, which was the entity that originally entered into the licensing agreement with Laser Band in May 2003. Because neither party has suggested that the distinction in the companies is at issue in this dispute, the Court will refer generally to CCL when invoking either company.

1

alleging (among other claims) that Laser Band breached the agreement by granting permissions to third party Zebra Technologies, Inc., which acquired Laser Band in 2012, to manufacture certain wristband forms. In its demand, CCL did not explicitly seek a monetary award, but instead asked the arbitrator to find that Laser Band had breached portions of the licensing agreement between the parties, and to require it to cease all such breaches.

The arbitration award in its entirety is complex and largely immaterial to the Court's ruling on the instant motion, but the Court will briefly summarize the issues to the extent they are relevant. CCL alleged that as a part of the licensing agreement, Laser Band would incur a royalty upon the sale of any patented wristband form by CCL. Laser Band warranted and represented that the royalty rates specified in its agreement with CCL were as favorable as any royalty rates Laser Band granted to other licensees in the prescribed region, under the same rights and for the same products. Laser Band purportedly agreed to provide notice to CCL and to adjust the rates to match any lower rates granted by Laser Band in the prescribed region, under the same rights and for the same products. In the arbitration demand, CCL alleged that Laser Band licensed its patented wristband forms to a competitor company called Ward Kraft, and breached the licensing agreement between Laser Band and CCL by charging Ward Kraft no royalty rate on certain wristband forms.

CCL further argued that the licensing agreement precluded Laser Band from contracting with manufacturers other than CCL and Ward Kraft to manufacture the licensed products. CCL alleged that Laser Band breached this portion of the agreement by allowing Zebra Technologies, Inc., once it acquired Laser Band, to begin manufacturing some forms of the patented wristbands.

An arbitration hearing was held from March 9, 2015, through March 11, 2015, in St. Louis, Missouri. The arbitrator issued a ruling on June 19, 2015, finding that Laser Band did not breach the licensing agreement. According to the arbitrator, CCL did "not seek any monetary award" under any of its allegations, and damages were not awarded to either party. (Doc. No. 1-2 at 4.)

In July 2013, Laser Band filed a Motion to Confirm Award of Arbitrator in Missouri state court, litigation that remains pending following CCL's request to stay the action. On September 17, 2015, CCL filed a Motion to Vacate or Modify the arbitration award and initiated the instant case, arguing that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

In its present motion to dismiss, Laser Band argues that this Court lacks subject matter jurisdiction pursuant to 28 U.S.C. Section 1332(a)(1) because the amount in controversy does not exceed $75,000.[2] Laser Band posits that because the arbitration award did not include any monetary damages, the amount in controversy is "zero dollars." (Doc. No. 9 at 5.) Further, Laser Band argues that CCL did not include a monetary element in its arbitration demand, and that any financial impact on the parties as a result of the arbitration proceedings constitutes a collateral effect that cannot be considered in determining jurisdiction. Laser Band alternatively argues that the Court should dismiss the present action because the state court motion to confirm is parallel litigation that was first-filed, and that the state court has subject matter jurisdiction.

---

[2] Importantly, both parties appear to recognize that the Federal Arbitration Act ("FAA") is not directly relevant to the Court's consideration of the instant motion, because although the FAA creates substantive law governing arbitration agreements, the statute does not confer subject matter jurisdiction on the federal courts. Southland Corp. v. Keating, 465 U.S. 1, 16 (1984). Thus, a petition under the FAA to vacate or modify an arbitration award may be brought in federal court only if an independent basis for jurisdiction exists. See, e.g., Northport Health Servs. of Arkansas, LLC v. Rutherford, 605 F.3d 483, 486 (8th Cir. 2010).

CCL responds that the underlying action should be construed as one for declaratory or injunctive relief, and cites to Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333 (1977), for the proposition that "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Id. at 347. Here, CCL characterizes the value of the object of the action—specifically, vacatur or modification of the arbitrator's award to reflect a breach of contract—as exceeding $75,000, because, according to Plaintiff, the sale of wristbands by third party Zebra Technologies, Inc., has a value of hundreds of thousands or even millions of dollars. CCL also argues that dismissal in favor of the state court case is unwarranted because the federal forum is convenient, federal law controls, and only this Court can adjudicate the Motion to Vacate or Modify.

**LEGAL STANDARD**

A federal district court may not proceed on a pending action unless it is satisfied that it has subject matter jurisdiction. Jones v. United States, 727 F.3d 844, 846 (8th Cir. 2013); see also Fed. R. Civ. P. 12(h)(3). The party asserting federal jurisdiction bears the burden of establishing the basis for such jurisdiction. Jones, 727 F.3d at 846. "Jurisdictional issues, whether they involve questions of law or fact, are for the court to decide." Osborn v. U.S., 918 F.2d 724, 729 (8th Cir. 1990).

In a facial attack on subject matter jurisdiction, the Court limits itself to the face of the pleadings, and the non-moving party receives the same protections as it would were the Court considering a motion under Rule 12(b)(6). Osborn, 918 F.2d at 729. But even in a facial attack, "[t]he district court may take judicial notice of public records and may thus consider them on a motion to dismiss." Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003). Moreover,

while it must construe all facts and inferences in favor of the non-moving party under the Rule 12(b)(6) standard, see Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." Wiles v. Capitol Indem. Corp., 280 F.3d 868, 870 (8th Cir. 2002).

## DISCUSSION

In order to establish federal jurisdiction under § 1332(a)(1), the parties must be citizens of different states and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a)(1). "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93–94 (1998) (quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868)). Thus, a federal court will dismiss an action if it appears to a legal certainty that the value of the claim is less than $75,000. In re Minnesota Mut. Life Ins. Co. Sales Practices Litigation, 346 F.3d 830, 834 (8th Cir. 2003).

Other district courts have considered how to evaluate the amount in controversy in an action to affirm, vacate, or modify an arbitration award. See, e.g. Dyrdal v. Enbridge, Inc., 738 F. Supp. 2d 927 (D. Minn. 2010). Courts have variously considered (1) the demand made in the underlying arbitration, (2) the award made in the arbitration, or (3) the matter at stake in the dispute, particularly in cases where a plaintiff seeks to reopen the arbitration. Id. at 931 (summarizing approaches). Neither party has proffered Eighth Circuit precedent to guide the Court as to which method of analysis is preferred, and the Court's own research has not identified any such guidance.

However, in the instant matter, the Court determines that, regardless of the method used, CCL has failed to establish that the amount-in-controversy requirement is met. First, under the so-called "demand" or "award" analyses, Plaintiff's claim fails to establish subject matter jurisdiction. The demand in the underlying arbitration was for purported enforcement of a licensing agreement with unspecified financial impact, and the "award" of the arbitrator—essentially, a maintenance of the status quo and a denial of Plaintiff's requested relief—is not monetary in nature and has no postulated financial effect. Supporting documents in the record are also unavailing.[3] In the demand for arbitration, the "Brief Description of the Dispute" is listed as "[w]hether Laserband [sic] violated Section 2.3 and 3 of a License Agreement between the parties." (Doc. No. 8-1 at 1.) The "Dollar Amount of Claim" is listed as "N/A; parties will seek to resolve this based on ruling of the two issues." Id. The arbitration decision states specifically that "[CCL] does not seek any monetary award, but rather requests the arbitrator to find that Laser Band has breached Sections 2.3 and 3 of the License Agreement and that Laser Band must immediately cease any such further breaches." (Doc. No. 8-2 at 18.)

Moreover, even if the Court takes a more comprehensive view of the "matter at stake" in the dispute, the pleadings simply do not provide the Court with a factual basis for the cursory conclusion that "the amount in controversy exceeds $75,000[.]" This sole, unsupported allegation—the only affirmative valuation of the amount in controversy offered anywhere in the record before the Court—is insufficient under the standards of Rule 12(b)(6) standard, which this

---

[3] Because this is a facial attack, the Court is generally limited to the face of the pleadings; however, upon Defendant's unopposed request, the Court takes judicial notice of publicly available documents pertinent to Plaintiff's claim, including the demand for arbitration and the pending state court motion to confirm the award, which file includes the arbitrator's award itself. See Stahl, 327 F.3d at 700.

Court applies in a facial attack on subject matter jurisdiction.[4]  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Regardless of which method of analysis the Court applies, there are no presented facts, in either the instant Motion to Vacate or Modify or in the documents inciting the underlying arbitration dispute, from which the Court can conclude that the amount-in-controversy requirement is met.

There is another line of cases culminating in CMH Homes, Inc. v. Goodner, 729 F.3d 832 (8th Cir. 2013) that addresses the presence of subject matter jurisdiction in claims attempting to compel arbitration pursuant to the FAA, 9 U.S.C. § 4.  Because this matter is not brought under the FAA, and because it addresses modification or vacatur of an already-entered arbitration award, this line of cases is not controlling.  However, to the extent the Goodner line of cases is persuasive to the Court's reasoning, it produces the same outcome.  In Goodner, the Eighth Circuit explained:

> Although [Vaden v. Discover Bank, 556 U.S. 49 (2009)] considered federal question jurisdiction, its reasoning applies when a court evaluates whether the minimum amount in controversy is present for purposes of diversity jurisdiction . . . Section 4 directs a district court to assess whether, absent an arbitration agreement, it would have jurisdiction under Title 28 over 'the controversy' presented in 'a civil action.'

Goodner, 729 F.3d at 835-36 (8th Cir. 2013).  In the instant matter, even if the Court looks through to "the controversy" presented, the Court cannot reliably conclude, based on the

---

[4] Plaintiff also directs the Court to a commercial website apparently operated by Zebra Technologies, Inc.  Because this is a facial attack, the Court will not consider matters outside the pleadings save for publicly available documents subject to judicial notice.  Even assuming *arguendo* that the website might qualify as such, the Court was unable to access it when it attempted to do so.  In any case, the Court notes that a commercial website is unlikely to sufficiently address the attenuated financial impact of a licensing dispute for purposes of establishing jurisdiction.

information presented to it in the pleadings, or upon reasonable review of other publicly-available information submitted by either party, that the ruling on the arbitration demand would have a financial impact that is in excess of $75,000.00. Therefore, based on the pleadings and publicly-available information and construing all facts and inferences in the Plaintiff's favor, there is no factual basis to support the conclusory assertion that the amount-in-controversy requirement is met.

The Court does not wholly reject Plaintiff's position that the Motion to Vacate or Modify is to be construed as an action for the equivalent of declaratory relief,[5] and that Hunt is relevant in its instruction that "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt, 432 U.S. at 347. However, this does not resolve the inquiry, because the "object of the litigation" is itself the modification of an arbitration award, the underlying demand for which was not monetary in nature. It is also true that Plaintiff is prospectively asking the Court to rule that Laser Band breached the licensing agreement. However, pursuant to Plaintiff's arbitration demand, the only outcome of such a ruling would be injunctive relief. Again, no sufficient representation has been made to the Court regarding the monetary value of either the relief sought in the original arbitration proceeding, or the purported financial harm caused by the arbitration award as it was entered.

Thus, even if this Court construes the Motion to Vacate or Modify as one for declaratory relief, Plaintiff asks this Court to consider not merely the value of the object of the litigation, but to forecast, with no support save Plaintiff's conclusory representations, the value of the collateral

---

[5] But cf. X–Rite, Inc. v. Volk, 2008 WL 1913926, at *1 (W.D. Mich. Apr. 28, 2008) (stating that arbitration suits "are on a different legal footing than declaratory actions"). Nonetheless, as explained herein, whether this action is treated as one for declaratory judgment is not dispositive.

consequences of that object. This is a leap too far for the Court to make. See, e.g., Hansen Beverage Co. v. DSD Distributors, Inc., No. 08CV0619-LAB (RBB), 2008 WL 5233180, at *6 (S.D. Cal. Dec. 12, 2008) ("Any effects that flow from the arbitrator's determination of the rights of the parties, including the continuation of the distributor arrangement or the future termination of the contract, are collateral consequences of the arbitration award."). It is a long-settled rule that "subject-matter jurisdiction 'depends on the state of things at the time . . . the action [is] brought.'" Rockwell Int'l Corp. v. United States, 549 U.S. 457, 473, (2007) (quoting Mullan v. Torrance, 22 U.S. (9 Wheat.) 537, 539 (1824)).

Finally, because the Court determines that subject matter jurisdiction does not exist, it need not consider Laser Band's alternatively proffered argument that this Court should abstain from adjudicating this matter in favor of the parallel state court proceeding.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion to Take Judicial Notice (Doc. No. 8) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss (Doc. No. 6) is **GRANTED**.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

Dated this 17th day of May, 2016.